## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AKHENATON JONES,                          :
     *Plaintiff,*                        :
                                        :
     v.                                 :          CIVIL ACTION NO. 23-CV-3791
                                        :
BLANCHE CARNEY, *et al.*,                  :
     *Defendants.*                       :

## MEMORANDUM

**Pappert, J.**                                          **September 5, 2024**

Akhenaton Jones filed a *pro se* Complaint (ECF No. 2) pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights when he was a pretrial detainee at the Curran-Fromhold Correctional Facility ("CFCF").[1]  He named as Defendants the City of Philadelphia ("the City"), Philadelphia Department of Prisons ("PDP") Commissioner Blanche Carney, PDP Chief of Staff Gregory Vrato, the Warden and numerous other employees of CFCF (collectively, the "Municipal Defendants"), as well as PDP's healthcare contractor YesCare and Jane Doe nurses employed by YesCare.

The Municipal Defendants' moved to partially dismiss the complaint (ECF No. 16).  The Court grants the motion in part and denies it in part.  Jones will be allowed to amend his Complaint.

---

[1]  Jones is currently housed at the Riverside Correctional Facility.  Whether his status has changed from pretrial detainee to convicted prisoner is not apparent to the Court.

I[2]

Jones alleges that on January 28, 2023, he submitted a grievance at CFCF seeking to enforce an order of the judge overseeing his state criminal trial.[3]  (Compl. at 8.)  Jones avers that the order required CFCF to provide him with daily law library access and "access to a computer to review [his] discovery on USB drives from the District Attorney's office" because he was proceeding *pro se* at that time in his criminal case.  (*Id.*)  He claims that he "spoke to CFCF's Captain Moore" (whom Jones does not name as a Defendant) about the grievance and was told that Defendant Vrato would have to be consulted on the content of any court orders.  (*Id.*)  Jones alleges that after that conversation, unnamed CFCF officers searched his cell and confiscated the USB drives, telling him that "Vrato ruled [Jones] was not allowed to keep them and that they were contraband as they posed a security threat."  (*Id.*)

Jones asserts that when he next appeared before the state trial court on February 17, 2023, the trial judge called CFCF administrators during the hearing and instructed them to return the USB drives and to provide Jones with daily law library visits and access to a computer to view the materials on the USB drives.  (*Id.*)  Jones claims that based on CFCF's delay in facilitating his discovery review, the judge

---

[2]  The facts set forth in this Memorandum are taken from Jones's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.  Additionally, the Court includes facts reflected in publicly available state court records, of which the Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[3]  No party has provided a citation to the criminal docket, included any exhibits from the trial proceedings, or indicated the status of those proceedings.  It appears that Jones's criminal docket may not be publicly available.  *See Commonwealth v. Jones*, No. MC-51-CR-0002322-2021 (Mag. Dist. Phila.) (noting Jones's preliminary hearing and transfer of case to the Philadelphia Court of Common Pleas).

continued the trial for eleven months from its scheduled start date of March 27, 2023, until February 12, 2024, "guarantee[ing his] pretrial incarceration for at least another 330 days when [he] had already been in pretrial detention for 750 days." (*Id.*)  Jones states that he was "provided very limited access" to his discovery materials beginning on March 9, 2023.  (*Id.*)  He alleges that on May 9, 2023, "upon the orders of CFCF MIS Captain Hurley," unnamed CFCF officers confiscated the USB drives again and the computer he had been using was replaced by one that was not equipped to process USB drives.  (*Id.* at 8-9.)  He claims that since May 9, 2023, he has not had "adequate resources" to review his discovery.  (*Id.* at 9.)

Jones further alleges that on June 27, 2023, his legal visit was prematurely terminated by CFCF corrections officer Antwyne Powell.  (*Id.*)  When he was returned to his housing block, he complained to corrections officer Doreen Bright and Lieutenant Crystal Bellinger.  (*Id.*)  Powell then allegedly arrived at the housing block, threatened Jones, and directed racist and homophobic slurs at him.  (*Id.*)  Jones alleges that Powell then punched him in the face, slammed him into a wall, threw him to the ground, and destroyed his legal materials.  (*Id.*)  He claims that this assault happened in view of Defendants Bright, Bellinger, and Shayla Duncan, as well as "Nurse Edourd[,] a civilian employee of YesCare,"[4] and none of them intervened.  (*Id.*)   Jones claims that Defendant Bellinger and "Sgt Divers" (not named as a Defendant) fabricated a misconduct charge against him, of which Defendant Harmer found him guilty at a disciplinary hearing.  (*Id.*)  He states that he put in sick calls for his physical and

---

[4]  Although he uses the name "Edourd" in the body of the Complaint, he names only an unspecified number of Jane Doe Nurses as Defendants in the caption of the Complaint. (*Compare* Compl. at 3, *with id.* at 9.)

mental injuries stemming from the alleged assault by Powell, "yet never received any treatment from nurses or other healthcare staff." (*Id.*)  Jones seeks injunctions ordering the City to release him from custody and dismiss his criminal charges, as well as money damages. (*Id.* at 6.)

The Municipal Defendants have moved to dismiss all but Jones's claims against Powell for excessive force pursuant to § 1983 and assault and battery under state law.[5] (ECF No. 16 at 5.)  YesCare has filed an Answer to the Complaint with affirmative defenses. (ECF No. 19.)

## II

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[5] Although Jones's Complaint mentions "retaliation" in places (*see, e.g.*, Compl. at 7), the Municipal Defendants' Motion does not address any retaliation claims.  In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  Like the Municipal Defendants, the Court does not understand Jones to allege a retaliation claim, because passing references to various legal precepts, without further development, are not sufficient to state plausible claims. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) ("[A] 'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).  In any event, to the extent that Jones intended to allege a retaliation claim, it is not clear whom he brings that claim against and what the contours of that claim might be.

*Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).  "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim."  *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Additionally, since Jones is proceeding *in forma pauperis*, the Court may independently screen his Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim.  *Brown v. Sage*, 941

F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim.").  The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  This provision provides the Court with an independent basis for assessing the plausibility of Jones's claims, including by addressing issues that the parties have not raised.

A complaint may also be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *See Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims."  *Garrett*, 938 F.3d at 93 (citation omitted).  "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  *Id.* (internal quotations omitted).  The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits."  *Id.* at 94.

### III

Jones brings claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a

claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A

First, to the extent that Jones seeks release from custody or dismissal of his state criminal charges, he fails to state a claim to relief. When a prisoner seeks dismissal of state charges or release from pretrial detention because of constitutional violations, his claims must be pursued in state court or in a petition for a writ of *habeas corpus* filed in federal court; such claims are not cognizable in a civil rights action under § 1983. *See Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus."); *see generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (when a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus").

## B

The Municipal Defendants move to dismiss all claims against the City, Commissioner Blanche Carney, Warden Angelucci, and "Official Visit Correctional

7

Officer" Michele Garner on the grounds that no facts are alleged against them.  (ECF No. 16 at 6,8).

1

To plead a basis for liability against a municipal entity such as the City of Philadelphia under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury."  *Id.* (internal quotations and alterations omitted).

It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Estate of Roman*, 914 F.3d at 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95

8

F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*  Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Jones makes no allegations in his Complaint concerning a policy or custom of the City.  He has thus failed to present a cognizable legal claim to which the City could respond on the merits.  *See Garrett*, 938 F.3d at 94.  Accordingly, any claim against the City will be dismissed.

2

As to Defendants Carney, Angelucci, and Garner, the Municipal Defendants' motion correctly asserts that Jones's Complaint does not contain any factual allegations about their involvement in his claims.  (ECF No. 16 at 6.)  Jones's response to the motion indicates that he intended his allegations to be construed as raising claims for direct or supervisory liability against some or all of these defendants in their individual capacities.[6]  (See ECF No. 20 at 2-3.)

_____

[6]  To the extent Jones indicated an intent to sue these or any of the other Defendants in their official capacities, any such claims are dismissed as duplicative of the claims against the City.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Id.* at 227. Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or

custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  In this context, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be

'tolerated.'  However, a director cannot be held liable 'simply because of his position as

the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir.

2005))).  Regardless of the theory of liability, a supervisory claim requires "a showing

that there was an actual constitutional violation at the hands of subordinates" before

finding liability on the part of the supervisory prison official.  *Allen v. Eckard*, 804 F.

App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and

supervise claims asserted against supervisor defendants were meritless where the

plaintiff failed to make a plausible showing of an underlying constitutional violation).

To the extent Jones's claims against Carney, Angelucci, or Garner stem from

their respective supervisory roles, they will be dismissed without prejudice because

there are no factual allegations to support any basis for a supervisory liability claim.

However, Jones will be allowed to amend his complaint to the extent he can allege facts

that describe "'the actions taken by [the named] defendants' in regard to the plaintiff's

claims."  *Garrett*, 938 F.3d at 93 (citation omitted).

C

Jones alleges that Vrato and Hurley prevented him from viewing his discovery

materials contrary to a court order issued by the judge overseeing his state criminal

prosecution and, relatedly, that Powell terminated his legal visit.[7]  The Court

understands Jones to allege that these acts violated his right to access the courts under

the First and Fourteenth Amendments and his right to the assistance of counsel under

the Sixth Amendment.  *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)

---

[7]  Jones's Complaint is not clear as to whether he is proceeding *pro se* or with the assistance
of counsel in his criminal case.  (*Compare* Compl. at 9, ¶ 12 (referring to the "preparation
for [his] pro se criminal defense"), *with id.* at 10, at ¶ 13 (alleging termination of an
"[o]fficial legal visit").)

(recognizing that a constitutional right to effectively use the courts has been found in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses); *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) (noting that "the right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts," and distinguishing the "access claims at issue in *Lewis* [*v. Casey*, 518 U.S. 343, 355 (1996)]" from the "Sixth Amendment right of a pretrial detainee, in a case brought against him by the state, to utilize counsel in his defense"). Jones asserts that, owing to the Defendants' alleged interference, the state court delayed his criminal trial for eleven months because the judge "sa[id] he would not hold the trial without [Jones] having had the opportunity to review the discovery evidence." (Compl. at 8.)

The Municipal Defendants argue that Jones fails to state a claim for interference with his right of access to the courts. They assert that "only claims that involve 'direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of his confinement [can] support an access-to-courts injury,'" and that Jones "alleges exactly as the Supreme Court instructs is a perfectly constitutional consequence of conviction and incarceration—that his ability to prepare for his trial was impaired." (ECF No. 16 at 7 (first quoting *Rivera v. Monko*, 37 F.4th 909, 921 (3d Cir. 2022), then citing *Lewis*, 518 U.S. at 355). This argument is inapposite because, at the time of the events alleged in the Complaint, Jones had not been convicted; he was a pretrial detainee, so the Defendants had no license to impose a "consequence of conviction."

The United States Court of Appeals for the Third Circuit has previously rejected the same argument the Municipal Defendants now make. *See Prater v. City of Philadelphia*, 542 F. App'x 135, 138 (3d Cir. 2013) (*per curiam*) (concluding that, although access-to-courts claims brought by convicted prisoners are generally limited to "only two types of cases—challenges (direct or collateral) to their sentences and challenges involving conditions of confinement . . . because Prater had not been convicted, we do not believe such a limitation is applicable"). "Further, although [*Lewis v.*] *Casey* 'limits the types of cases in which the prison must provide affirmative assistance, it does not give free reign to prison authorities to interfere with and impede a prisoner's pursuit of other legal actions.'" *Id.* (quoting *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir.2010)).

Because the Municipal Defendants have failed to present a cognizable argument entitling them to dismissal of Jones's claims for denial of his rights to access the courts and the assistance of counsel to prepare his defense, their Motion is denied as to these claims. *See Benjamin*, 264 F.3d at 186 (holding that *Lewis*'s "actual injury" requirement does not apply in the context of a pretrial detainee who claims prison officials interfered with his access to counsel); *cf. Harden v. Bodiford*, 442 F. App'x 893, 897 (4th Cir. 2011) (*per curiam*) (vacating dismissal of pretrial detainee's access-to-courts claim "[b]ecause Harden's undisputed allegations are sufficient, if believed, to show that he was denied access to courts and suffered genuine prejudice, resulting in prolonged incarceration").

D

Jones asserts against Powell claims for excessive force under federal law and assault and battery under state law.  The Municipal Defendants' Motion does not seek dismissal of these claims, nor have they otherwise reported to them.  These claims as pled also survive statutory screening.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (holding that, to state a due process violation based on excessive force, a pretrial detainee must allege facts to plausibly suggest that "that the force purposely or knowingly used against him was objectively unreasonable").

Jones further alleges that Bright, Bellinger, and Duncan witnessed Powell's actions and did not intervene.  "[A] corrections officer's failure to intervene in a beating can be the basis of liability for [a] . . . violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."[8]  *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  "[T]he duration of the incident is key to determining whether there was a reasonable opportunity" to intervene, and an incident's "brevity may defeat a failure-to-intervene claim."  *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (cleaned up) (citing *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)).  Yet an incident's duration is generally a factual rather than legal issue, particularly "where the event unfolds in multiple stages."  *Id.* (citing *Mensinger*, 293 F.3d at 644, 650); *see also Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) ("Whether the officer had a realistic opportunity to intervene is normally a question for

---

[8] Jones also alleges that a YesCare employee Nurse was present and failed to intervene. (Compl. at 9.)  However, because Jones has not identified—and the Court is unaware of—a similar duty to intervene for a civilian employee who is not a corrections officer, any claim for relief on that basis will be dismissed because it is not plausible.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." (internal quotation marks and citation omitted)).

Jones alleged that Powell first directed slurs at him and threatened physical harm, then punched him, slammed him into a wall, and threw him to the ground. (Compl. at 9.)  The Municipal Defendants assert that because Jones claims only that this happened "in view" of Bright, Bellinger, and Duncan, the allegations are insufficient to suggest "that they actually viewed the incident—or had a realistic and reasonable chance to intervene, if say, the incident was too short in time for intervention."  (ECF No. 16 at 7.)  Because Jones alleges that these Defendants witnessed Powell threaten violence, then engage in three separate acts of physical force, Jones sufficiently states a claim by describing an event that "unfold[ed] in multiple stages." *El*, 975 F.3d at 335.  Accordingly, the Municipal Defendants' Motion is denied as to Jones's failure-to-intervene claim against Bright, Bellinger, and Duncan.

E

Jones further alleges that, following the incident with Powell, Defendant Bellinger and Sgt. Divers (not named as a Defendant) "issued a fraudulent misconduct report . . . which falsely stated that they were the complainant and supervisor involved in the incident."  (Compl. at 9.)  Jones states that Defendant Harmer found him guilty on the misconduct charges "after denying [Jones] a request for witness evidence, review of surveillance camera footage, and his presence at the disciplinary hearing."[9]  (*Id.*)

---

[9]  The Municipal Defendants assert that "[t]he City has not accepted service on behalf of Captain Harmer."  (ECF No. 16 at 4 n.1.)  This assertion is contradicted by the record.  (*See* ECF No. 12 at 3 (accepting electronic service on behalf of Defendant Harmer); *see also* ECF No. 15 (entering appearance on behalf of Defendant Harmer).)  Although the City's Motion makes no arguments on behalf of Harmer in relation to the due process claims (*see* ECF No.

Jones asserts that after this hearing he was "placed in the hole" on June 27, 2023, but does not indicate how long that placement lasted.  (*Id.*)

The Court understands Jones to allege that he was placed in disciplinary segregation without due process.  Although Jones cites various other constitutional provisions, these claims arise—if at all—under the Fourteenth Amendment, since he was a pretrial detainee during the relevant period.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees); *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").

To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that the conditions of his confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, 843 F. App' x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective.").  In that regard, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."  *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)), *abrogation on other grounds*

---

16 at 8), the Court has nonetheless evaluated the plausibility of these claims.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

recognized by *Fisher v. Hollingsworth*, --- F.4th ---, No. 22-2846, 2024 WL 3820969 (3d Cir. Aug. 15, 2024); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

The United States Court of Appeals for the Third Circuit has noted that "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement." *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian*, 696 F.3d at 375).

With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Those protections contemplate that a disciplinary hearing will be held, "includ[ing] the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson*, 495 F.3d at 70. "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), because "[d]ue process is satisfied where an inmate is afforded an

opportunity to be heard and to defend against the allegedly false misconduct reports,"
*Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v.
Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural
requirements are satisfied, mere allegations of falsified evidence or misconduct reports,
without more, are not enough to state a due process claim.").

Jones alleges a plausible due process claim. Like their argument regarding his
access-to-courts and -counsel claims, the Municipal Defendants' Motion fails to
recognize that Jones's status as a pretrial detainee distinguishes him from a convicted
prisoner in legally significant ways.[10] While allegations of false misconduct reports
"without more" are insufficient to state a claim, here there is "more." Jones has alleged
that the disciplinary hearing resulting from the purportedly falsified misconduct report
proceeded without the requisite due process protections for pretrial detainees as
outlined in *Wolff*. Specifically, he could not present witnesses or evidence, and he was
not allowed to be present at the disciplinary hearing, denying him the "opportunity to
be heard and to defend against the allegedly false misconduct reports." *Thomas*, 467 F.
App'x at 97. The Court denies accordingly the motion as to these claims.

## F

Jones asserts that, following the incident with Powell and his placement in
restricted housing, he "put in sick calls for treatment of injuries" that he suffered from
the alleged assault, "yet never received any treatment from nurses or other healthcare

---

[10] Specifically, the Municipal Defendants argue that Jones has not pled a due process
violation because he has not alleged an atypical and significant hardship in relation to the
ordinary incidents of prison life. (ECF No. 16 at 8.) This standard, however, applies to
convicted and sentenced prisoners and is inapplicable in the pretrial detainee context. *See,
e.g.*, *Stevenson*, 495 F.3d at 69 n.4.

staff." (Compl. at 9.) The Municipal Defendants' Motion does not address this claim, as Jones does not tie these allegations to any of the named Defendants. YesCare filed an Answer with affirmative defenses on behalf of itself and any of its employees named as Doe Defendants. (ECF No. 19.)

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[11] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*,

---

[11] Because Jones was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard*, 399 F.3d at 166. However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id.* (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Further, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

To the extent Jones intends to assert a claim for denial of medical treatment against any of the Municipal Defendants, who are not medical professionals, he fails to allege that any specific individual was deliberately indifferent to his medical needs. Those claims will be dismissed without prejudice to amendment. As YesCare has filed

an Answer to the claim for denial of medical treatment related to Jones's injuries, that claim may proceed.[12]

IV

For the foregoing reasons, the Municipal Defendants' Motion to Dismiss is granted in part and denied in part.  To the extent Jones seeks release from custody or dismissal of his criminal charges, or to impose liability on any named Defendant based on a theory of *respondeat superior*, those claims are dismissed with prejudice.  Any claims for municipal liability against the City, individual-capacity claims for supervisory liability, and any claims against the Municipal Defendants for denial of medical treatment are dismissed without prejudice to amendment.  The Motion to Dismiss is denied in all other respects.

Jones may amend his Complaint before the case proceeds to discovery.  In accordance with Federal Rule of Civil Procedure 15(a), all Defendants should submit responsive pleadings to any amended complaint that Jones may file.  Should Jones choose not to file an amended complaint or fail to do so within the allotted time, the following claims will proceed as currently pled in the operative Complaint:

- claims against Vrato and Hurley for denial of access to courts;

- claims against Powell for excessive force, assault and battery under state law, and interference with the right to counsel;

---

[12] YesCare's Answer primarily concerns the treatment Jones has received for other medical issues and denies that Jones sustained any injuries from Powell's alleged assault.  (ECF No. 19 at 2.)  Jones has requested that any personal medical information unrelated to his excessive force claims that is included in YesCare's Answer be redacted.  (*See* ECF No. 21.)  The Clerk of Court will be directed to mark YesCare's Answer as viewable by internal court users only.  YesCare is instructed to refrain from divulging personal medical information in any future publicly available filings.

- claims against Bright, Bellinger, and Duncan for failure to intervene in Powell's alleged excessive force;

- claims against Bellinger and Harmer for due process violations; and

- claims against YesCare and its employees for denial of medical treatment.

An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*

**Gerald J. Pappert, J.**